Good morning, welcome, and happy Friday. We have three cases this morning and just a couple of housekeeping matters before we get started. You'll see our timing system for oral argument. It's like a traffic light system. The light will be green until you have two minutes left in your allotted time, and then it will turn yellow. And when the light turns red, we ask that you quickly bring your argument to a close, the exception being if you're answering a question from the court, you may finish your answer. The other thing is you should be aware that we are very familiar with your cases. We've studied your cases, and so you should feel free to dispense with long introductions and go directly to your arguments. Our first case of the morning is number 22-10732, Curtis Baker v. City of Madison, Alabama. Mr. Osmond, you saved five minutes for rebuttal, correct? My name is Frank Osmond, and I represent Curtis Baker. First of all, thank you very much for When we submitted the briefs, I felt as though there were some things that I just was not articulating very well, and with the passage of time, I hope that has improved a little bit. I want to first touch on one of the procedural issues that we raised in our brief, and that on a motion to dismiss without converting that to a motion for summary judgment. And the reason we believe that is important is because, number one, there's not a published opinion that I know of addressing that issue in this circuit. Number two, the rules do specifically contemplate incorporating an instrument in this fashion, and that's okay, and we're not here to argue about that or to complain about that. But we do believe that it's appropriate, while it is appropriate to incorporate an instrument, or to treat an instrument that's incorporated by reference, on a motion to dismiss without converting it into a motion for summary judgment, it is less so with respect to a body cam video. And the reason is, an instrument is something that is, by implication, a complete writing, one that is generally prepared fairly carefully. It's not just any paper, but an instrument that calls to mind things such as deeds, mortgages, bank drafts or checks, contracts, perhaps. And those are things that are inevitably, or at least typically, perhaps not inevitably, but typically, questions of law for the Court that are appropriately disposed of on a motion to dismiss. Let me ask you this question. Do you challenge the authenticity of the video footage from the camera? I don't challenge that it is the footage from the body camera worn by Officer Nunez. And to that extent, the answer is no. We believe that is authentic in that sense. What we don't believe is that it's a complete, or at least helpful in all respects, depiction of what happened when all of this transpired. There's a great deal of emphasis laid, and I don't know that it's inappropriate, on whether Mr. Baker struck the officer or pushed him away or shoved him. And if he did, that would weigh, I don't think decisively, but would weigh in favor of concluding that Officer Nunez appropriately deployed a taser. But if one looks at the video, when it comes to that point, which I think is what we're interpreting as the shove or the push, it's not so clear. When Officer Nunez arrives, Mr. Baker is still non-communicative. He's just standing there still, looking down. There's some exchange with the paramedics. Officer Nunez approaches the paramedics and approaches Mr. Baker. There's some back and forth there. And then there is a fuzzy bit, if you will, where there's obviously some interaction. And we can't tell who is striking whom or if anyone is struck. So what would you have put into the record if this had been converted into summary judgment? I think we would have asked the court for permission, and I think Mr. Baker submitted a motion for discovery that was pro se, the investigative file, the names of the people who were there, and we would like to talk to them. And if they said, you know, Curtis, you don't remember this, but in fact you did strike him. Or if they said, no, you didn't strike him, because we can hear on the video, you know, Mr. Baker saying, I didn't touch you, I didn't touch you, I didn't touch you. After all of this transpires, we hear Officer Nunez speaking to people and saying, you know, he's very strong, I was threatened, he shoved me away. I don't hear anybody saying, yes, I saw that, you're correct, and that's what happened. Now, I do think there were officers who came later who assured him, you know, that's okay, you know, you're a nice guy, you didn't mess this up, you didn't do a bad thing. But I don't hear anybody ratifying, if you will, or confirming that in fact this guy did push you away, if you will. To that point, could the city have entered a transcript of the body cam footage? I beg your pardon? Could the city have entered a transcript of the body cam footage? They could have entered a transcript of the body cam image, I don't know, or of the body cam video, I don't know whether we objected to that. I mean, I'm not sure it would have been particularly helpful. What's important is, you know, what it depicts. Right, so going back to our law about incorporating documents into a motion to dismiss, my understanding is that Mr. Baker did refer to the body cam footage in his complaint, and that would, if it were an instrument, that would meet our role, the fact that authenticity is not challenged plus it's incorporated in the plaintiff's pleading. But I want to drill down more on what is different about a video where you think it's not appropriate. Is it because it's more, maybe the interpretation of it is more subjective, or what is it that makes it not meet that test? I think the reason we allow instruments to be treated in the way that the video footage was treated here is that if you are incorporating, by reference, an instrument into your pleadings, you're essentially vouching for its accuracy, and you're saying this is part of the deal, if you will. I mean, that's really where this comes into play. You're suing on a contract, you want to prove you have a contract, you know, you may anticipate a judgment on the The video, especially this particular video, is something that is very much alive and subjective. I mean, something that has to be interpreted. That's the reason. I look at this and I think, you know, it's one thing for you to conclude from this video that he struck Officer Nunez, but I don't believe that's what it depicts. And in fact, I hear him protesting that I did not touch you. Now, it is obviously there is some mistake. Isn't that a different claim, right? If there was a contract that was incorporated in the pleadings that said, if A, then B, and the district court had said, this contract says, if A, then C, you wouldn't say the district court totally misinterpreted the contract. Isn't that a slightly different argument than, we think the video shows something different than what the district court said, but you shouldn't have considered it at all? I draw a distinction there, and it may be mistaken, but I'll try to articulate it to you. If this was a motion for summary judgment, and we had submitted evidence that, for whatever reason, was inadmissible, you know, or we failed to submit evidence, that's one thing. We're talking here about whether we have that opportunity, and the reason why the video is not appropriately treated as something that would bar us from having that opportunity. I'm down to 17 seconds. I do want, and I can... Well, and I'm going to take some of your time, and the chair can decide whether to give it back or not. But as I understand it, you said one body cam. There was a second one from Officer Hose, right? And you don't contest the validity of that. It was a proper video, right? I mean, it was authenticated in terms of the limitations you described, right? Your Honor, that one was not authenticated to the same extent. I mean, what happened is it was offered, and you can see that someone is approaching, and then it just drops on the ground. Was that something that came from Officer Hose? But what it shows is that he arrived after the incident. It shows that the person wearing that body camera arrived after that incident, to be blunt. And nobody disputes the fact it was from Officer Hose's body. If David tells me that it's from Officer Hose's body camera... Okay. All right. That's my questions about that. Then I will take his word on that. But there was nothing in the way of an affidavit that would have... Well, you don't see Officer Hose in any of the first video cam. And then when he comes, we've got his video cam that shows the time of arrival, and everything's gone on before that. But now I want to go back to your claim, because I've looked at it quite a few times. And I think there are videos, and then there are videos. I've seen a lot of jail videos that don't have the right kind of angles, and you really can't tell what goes on. But this one, to me, was clearer than almost anything I've seen as to what went on here. Now, we can debate what went on in terms of whether it was excessive or not. But I don't understand how you say we couldn't see what we needed to see. And I'm going to walk you through it. Apparently, you've looked at it many times, I assume, right? Yes, ma'am. Okay. So he walks, you agree. We won't get into the almost 30 times he's been told to please just sit on the stretcher, and he won't do it. But that's another point. He walks to the driver's door. He pushes past the paramedic, and he gets back in the driver's seat. Is that correct? That's correct. Before anybody touches him. I beg your pardon? Before anybody touches him, before the taser has gone off or anything, right? That's correct. In fact, Officer Nunez got the taser out early on and said, I'm going to use this. Please sit on. But he didn't use it then. And then they keep pleading with your client to cooperate with the medics or with the officer. So he puts the taser back in the holster, because then he goes to get him out of the car. He's just had a wreck. They don't want him back in the car, right? They go to pull him out of the car, and that's when you have the so-called shove push, right? He's coming back out of the car. They're pulling him, and Nunez says, he's moving against me. He's hitting me, or whatever he says. I don't have that quote. That's when it happens, right? And Nunez gets out the taser again. He's in the car. Nunez goes with both hands. Nunez removes him from the car. Right. Standing outside. Nunez backs up. After Nunez backs up, there's some verbal exchange, and he uses the taser. Yeah, well, he's not still. He's moving toward Nunez. Your Honor, I need to go back and look at it again. Maybe I do, too. But my point is, I don't understand the argument. The video is as clear as it can be. It's straight on angles. It's a clear day. It's not at nighttime. You hear everything. If there ever were a video that was clear, now we can debate what the results should be here. What's not clear in the video, and what I took to be important, is whether Curtis Baker struck or shoved Officer Nunez. If Curtis Baker Well, let's forget about struck, whether he shoved. Let's try that. You'll at least say he shoved him. I don't see that video as depicting a shove. I see that video Well, is it 120633-36? I'm looking at my notes here. We can go look at it. I think it is important to look at it, because I think what happens is there's an invisible exchange. You've answered my questions, and I'm way over. Thank you. You keep your rebuttal. I don't want to take any more time. Thank you, Judge. There was one other unanswered question, and I don't recall what it is, but I'll be glad to take it up on rebuttal if it comes to mind. We'll give you your full time back for rebuttal. Thank you. Thank you. Good morning. May it please the Court. I'm David Canuff. I represent the City of Madison. Officer Deon Hose and Daniel Nunez, thank you for having us here today. If I could just start this way, immunity defenses are to be resolved at the earliest possible stage. Rule 1 says that we need a just, speedy, and inexpensive determination of every action. Now, what Appellant Baker seeks to achieve is the opposite result. He wants an unjust, slow, and expensive resolution of an action, despite the fact that he himself chose to both incorporate and even characterize the body cam video in paragraph 48 of his complaint. How much of a difference do you think the incorporation makes? I understand your argument that since he incorporated it, and I think we've certainly got to have some unpublished cases that adopt that view, what if a future plaintiff in a similar position does not incorporate a video, but it's just as clear and just as useful? What do you do then? It's just as permissible to consider the video so long as it is central to the claims And this Court has held that on numerous occasions. For instance, in the Hoffman Pugh v. Ramsey case, that was a 2002 decision involving John Bonnet Ramsey, it was a defamation case involving quotes from a book. The plaintiff didn't incorporate the rest of the book, but what did the Court do? It read the entire book because it was relevant and central to the claim. Was it a motion to dismiss, though? It was, Your Honor. The U.S. Supreme Court twice in 2007, first in the Telabs case, which we cited in our Rule 28J letter, and again in the Twombly decision, said that in considering a motion to dismiss, a court is to consider matters that are incorporated by reference into a complaint and matters that are subject to judicial notice. Both of those would apply in this case. So there's no doubt that the Court, in four unpublished opinions, this Court has already considered video. That's the Robinson v. City of Huntsville case, Cantrell v. McClure, Quinette v. Reed, and J.I.W. v. Dorminey. And if I can mention, Plaintiff's counsel stated that the video is somehow subjective. It's interesting because that same argument was made to this Court in Cantrell v. McClure, which was 805, Fed Appendix 817. Here's what the Court said. Quote, Appellant objects, arguing the video footage is subject to interpretation, but so, too, are words. So there's nothing, that argument doesn't carry the day. What about on your judicial notice point, are there certain rights that an opposing party has before the Court takes judicial notice of any sort of document or video? I can't think of any rights the opponent has. I mean, if the — Notice and that sort of thing. I'm sorry, Your Honor. Notice and that sort of thing. Well, certainly the plaintiff in this case was provided a copy of the video. Interestingly, Curtis Baker asked the Court to give him a copy of the video. We gave it to him. He then asked for a pretrial conference so that he could share evidence. He repeatedly injected and requested the video, and he had every notice necessary under Rule 201. So that would apply as well. Now, Plaintiff's Counsel, on appeal for the first time, never said this to the district court, but has argued that somehow the incorporation by reference doctrine is limited to Rule 10c. That's not the case. Let me read you what Rule 10c says. It says, quote, A statement in a pleading may be adopted by reference elsewhere in the same pleading or any other pleading or motion. That's the first part of the rule. That's not the case here. No one is arguing that a statement in a pleading was adopted by reference elsewhere. The second sentence of Rule 10 says, A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. Well, that's fine as far as it goes, but that's not what we're dealing with here. We're dealing with a situation in which the plaintiff said, quote, Upon information and belief, this is in paragraph 48 of his complaint, It is averred that the video recording is a display of what happened, i.e., Madison police using a taser on a harmless black man having a medical emergency. And it goes on to say he wasn't committing any crime. In other words, it characterizes the video. There's nothing that prevents a plaintiff from incorporating the video into his complaint. Rule 8 governs that. Rule 8 is the rule that gives you the instructions for how you plead a case. And the U.S. Supreme Court has said that if you incorporate something, you do that at your peril. It is to be considered. So Rule 10c is really not the pertinent rule in this case. Your Honor, let's talk quickly about what the video does show. Thirty-two commands to sit down are disregarded by Baker. Twelve of those are uttered by Nunez. That's at 120142 on the Nunez video. Baker repeatedly refused to provide a driver's license, despite the fact that he had just caused a car accident. That's at 1204 in the video, although he does it three or four times. He twice refuses a request to just lean against the wall or lean against his car. Those are requested both by the paramedic and Officer Nunez. An EMT says to Officer Nunez, I don't know if he's under the influence of something, which gives Officer Nunez certainly cause to be concerned. Well, he says, I don't know if he's under the influence. I don't know if he's had a seizure. I don't know if it's drugs. I don't know what's going on with him. Correct. So he said three or four things. He does. And Officer Nunez, not being a medical professional, has to assume that this man is not following orders. He knows that. And there may be some medical reason. There may not be. Of course, this Court has a long line of case law about altered mental states. And the truth is an altered mental state just means that the situation is more dangerous for the office. I think the medics, if you look at it, they thought he was a diabetic. They were pulling out the pen thing to check his insulin. Well, they did do that, but they didn't know. And Officer Nunez isn't charged with the responsibility of knowing medical information about a noncompliant subject. So here's what happens. He then says, I'm going to get in my MFing car. He threatens to get in the car. And then guess what? He breaks away from Nunez's grip, and he actually gets in the car. Officer Nunez has no idea what's in that car, guns, drugs, whatever. He doesn't know if the car is on, the keys are in the car. Certainly the car is a deadly weapon. This Court held that in Long v. Slayton. So Nunez has to go hands-on and pull Baker out of the car, at which point, as Your Honor already observed, he is shoved for the second time. This time he calls Officer Nunez a bitch. That is when the taser is deployed. And by the way, the taser had already been pointed at Baker previously. Baker knew what was potentially going to happen. And the other observation I would make is that the taser didn't even have a full effect on Baker. He was not incapacitated. He did not fall to the ground. He fought through it, and he pulled his sweatshirt off. At the point when the taser was deployed, would a reasonable officer have thought he was likely to get back into the car? Absolutely. I mean, that is exactly what Officer Nunez was trying to prevent. He told him not to get in the car. He then did again. There were pedestrians standing all over the place. There were, what, five, six, seven paramedics standing there. What I'm trying to focus on, the officer has pulled him out of the car and at that point deploys the taser. At that point when he was out of the car, what was the evidence that he may have gotten back into the car, could have gotten back into the car? Well, he was moving back toward the car on the video. That's apparent. And he was also just completely noncompliant with all of the commands. He also, later in the video, said that he was just trying to go home. In other words, he admitted what he was attempting to do. So let me give you three cases that are almost exactly on point for this situation. Draper v. Reynolds is one of this Court's seminal taser cases. It's 369 F. 3rd, 1270. That was a traffic stop in which a nonfunctioning taillight led an officer to pull someone over. The driver never engaged in the kind of physical resistance that Baker did. In other words, he did less than Baker ever did. But he was hostile, he was belligerent, he was difficult, and the officer tased him. And this Court held that that was a perfectly appropriate use of a taser. Draper v. Reynolds was decided in 2004. It's directly on point. It clearly supports qualified immunity. Long v. Slayton is the second case, 508 F. 3rd, 576. That's a 2007 decision. In that case, an officer confronted a man experiencing psychosis who had a vehicle. He didn't commit a crime, unlike Baker in this case who committed multiple crimes, which I can explain. But he was getting in an automobile, which was a potential deadly weapon, which this Court held was grounds for using not just a taser but lethal force. He was killed because he was getting in a car in defiance of commands. Long v. Slayton, wasn't that the case, though, where he drove the car toward an officer? I don't think he ever moved the vehicle. He was getting in the vehicle. Your Honor, I would have to check for sure, but I don't think it moved. The vehicle was a police vehicle, if I recall. I think that's correct. I think it was a little problem he was going to take off in a police vehicle. Deadly nonetheless. The third case I'll mention, Your Honor, and, of course, it's post this incident, as are all the cases plaintiffs' counsel cites, which, therefore, are not useful at all. But Charles v. Johnson was a case this Court decided in 2021. It's 18F4-686. Now, again, the Court held in that case that the use of a taser to complain compliance from a passenger who was having a panic attack and refused to listen to officers was reasonable. The passenger ignored 21 commands from officers and pulled his arms and body away from the officers. I mean, it doesn't get any closer to these facts. That's exactly what happened in this case. The only two cases the plaintiff has relied upon post-date this incident, one is Helm v. Rainbow City. Now, that case involved a teenage girl who was convulsing on the ground, having seizures, while four adult men held her in place, and an officer still drive-stunned tased her. Those facts couldn't be more different. There was literally no reason in the world to tase that girl under those alleged facts. And, in fact, the Court held that she was restrained, compliant, and not causing any threat. Totally different from this case. Also, the facts of the case and the decision came out two years after this incident. The second case the plaintiff relied on is Bradley v. Benton. Well, that case has nothing to do with this case. An officer chased a subject to the top of a wall, where he then tased him on top of the wall, causing him to fall off and die. That's not this scenario whatsoever. So the plaintiff has the burden to overcome qualified immunity through specific – I want to make sure I understand the record. The taser shot one time? Correct, Your Honor. And did it malfunction, or did he just hit it one time? It did not malfunction. He hit it one time, but it didn't really go in. I mean, it just kind of went all – it didn't have any effect on Mr. Baker. It appeared to me that maybe only one of the two prongs penetrated his skin, which is why he had some pain, but he was not incapacitated. You can see in the video the officer takes out the cartridge and then installs a second cartridge on the taser, which would be necessary to shoot him again, but he never does. He never fires the taser again. Okay, so when the taser is fired, what comes out in this video? What happens here? You see two prongs shoot with wires attached, and those prongs hit Baker in the vicinity of his belly, which is the area where you're supposed to tase someone. But again, he's wearing a thick sweatshirt and a shirt underneath. It looks to me like perhaps only one of the prongs makes contact. But there is, when he takes off his sweatshirt, you see he has the white shirt. I don't know if it's a T-shirt or what it is, and there doesn't appear to be some blood-like penetration there. Yes, it certainly appears that at least one of the – penetrating caused blood. They have prongs there. It's sort of like a needle prick. But in order to have full effect, both prongs must enter the body, and in this case it would appear that only one. But regardless, even if it had had full effect, it was fully justified in this situation. Your Honor, if I could go back to one thing earlier. There was a discussion by Plaintiff's counsel that there had not been a published opinion of this court in which videos were considered on a motion to dismiss based on incorporation by reference. And I don't think that's accurate. Let me cite you a case from 2010. Speaker v. United States Department of Health and Human Services, 623 F. 3rd, 1371, at Note 8. The CDC, the Centers for Disease Control, was the defendant in that case. In moving to dismiss, the CDC attached documents and also videos of CDC press conferences. Those videos were not challenged for their authenticity, and this Court considered those videos under the incorporation by reference doctrine. I've mentioned in my Rule 28J letter as well that you've got at least six other circuits that have agreed with this circuit and considered videos, and frankly, I can't find a single circuit that has disagreed with that. What's ironic in this case is most of the times the videos are going to help the plaintiff and you want them in early. Correct. You want them in early. It will kind of expedite everything. This video is an unusual one. Correct. And the plaintiff — We've got to think about a lot of times it's going to help the plaintiff. Well, that's correct. You know, and the plaintiff, for his part, wanted the Court to consider the videos, ask for it in the complaint, ask for it in discovery, ask for the pretrial conference. Plaintiff's counsel relied on the video when he was resisting the motion to dismiss. The only thing plaintiff says that he could accomplish through discovery is to uncover witness statements, bystanders, and what they may have told the officers. But as Judge Hull already pointed out, there was conflicting information available to the officers as to what was — or officers, excuse me — as to what was going on. That's already apparent. So discovery is not going to lead to anything in this case. I see I'm past my time, Your Honor. If you have any questions, I'm happy to address them. But otherwise, I appreciate your attention. Thank you, Your Honor. Touching on the qualified immunity argument and also what the video shows, I think where we disagree is that Mr. Baker contends that he had the right to refuse medical treatment so that if somebody came to him and said, sit on the gurney or go to the hospital, he had the right simply to stand there or to say no. If he starts attacking people, then he doesn't have that right. And it's our contention that the video doesn't show that he was — it does show that he's swearing. It does show that he is continually disobeying commands. And since, as far as going back into the car is concerned, there's an exchange immediately before that where he's looking for his phone. I think after he's pulled from the car, there's similar remarks. I want to touch briefly on the subject of qualified immunity and why Rainbow City versus Helm is important. If Rainbow City against Helm was addressing the parameters of the plaintiff's constitutional right in announcing a new rule, then it would have only prospective impact, if you will, going forward with respect to qualified immunity analysis because it would be a new rule. And, you know, I think you guys had a case from Bessemer involving a situation where you ruled or a panel ruled that a plaintiff's constitutional rights had been violated, but, you know, it was not clearly settled at the time. That's not what Rainbow City versus Helm is about. Rainbow City versus Helm is talking about how do you analyze whether somebody has qualified immunity? What is the framework for that analysis? And it says the framework for that analysis when you're dealing with, in that case, a medical emergency is as follows, and then it enumerates a three-step process. There's no reason why that three-step process should not govern the qualified immunity analysis here, even though it was announced after the incident that's in question because it's not something that's defining the underlying constitutional right. The other thing I wanted to respond to regarding the incorporation by reference, and I think this is perhaps Judge Grant's question that slipped my mind as I answered another question. In his complaint, which he filed pro se, he did say, I think the video would show that, I think it would show what happened, okay? But he further says, I don't have the video. And so what we've gone from, or what I think the district court has sort of gone from, is to say, well, you mentioned the videotape in your complaint. Therefore, you're vouching for not only its authenticity, but also the contents of it, and it's the contents that we think are in dispute with all, bearing in mind Judge Hill's comments on how she interpreted the exchange. Your Honor, that is all I have. If there's any further questions, I'm glad to address them. Thank you.